**In the Interest of B.D., A.A., and B.W., Minor Children,**

**A.A., Sr., Father, Appellant.**

**No. 95–1528.**

Court of Appeals of Iowa.

Feb. 28, 1996.

Todd E. Babich of Babich, McConnell & Renzo, P.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Kathrine S. Miller–Todd, Assistant Attorney General, for appellee-State.

Michael Bandstra and Andrea Kurtz, Des Moines, guardians ad litem for minor children.

Considered by HAYDEN, P.J., and HABHAB and CADY, JJ.

HABHAB, Judge.

Anthony and Jalynn are the parents of A.A., born April 4, 1992. Jalynn is also the mother of two other minor children. The fathers of the other two minor children have had their parental rights terminated and do

not appeal those rulings. Jalynn did not appear at the termination hearing and her parental rights regarding all three children were terminated. Jalynn does not appeal.

In 1993, Anthony was convicted of conspiracy and distribution of cocaine. He was sentenced in January 1993 to serve a term of imprisonment for twenty-four years and four months. In February 1994, Anthony's sentence was reduced by 120 months to a total of 172 months for substantial assistance. Anthony is currently serving his sentence at the federal prison in Leavenworth, Kansas.

On January 14, 1994, the State filed a petition alleging A.A. was a child in need of assistance pursuant to Iowa Code sections 232.2(6)(c)(2), (6)(n), and (6)(o) (1993).[1] Specifically, the petition alleged A.A. and his two siblings had each tested positive for illegal drugs and Jalynn had a history of substance abuse. On the same day, the court ordered A.A. and his siblings be removed from Jalynn's care and placed in the temporary custody of the Department of Human Services (DHS).

Following the May 1994 adjudication and dispositional hearings, the court found A.A. to be a child in need of assistance as alleged in the State's petition and ordered him placed in DHS's custody.

In May 1995, the State filed a petition to terminate the parental rights of Anthony and Jalynn, as well as the rights of the fathers of the other two children. Following a July 1995 hearing, the court found clear and convincing evidence Anthony's parental rights should be terminated pursuant to Iowa Code section 232.116(1)(g) (1995). As was previously stated, Jalynn's parental rights over A.A. were also terminated.

Anthony appeals.

■ **I. *Scope of Review.*** Appellate review of termination proceedings is de novo. *In re W.G.,* 349 N.W.2d 487, 491 (Iowa 1984) *cert. denied sub nom. J.G. v. Tauke,* 469 U.S. 1222, 105 S.Ct. 1212, 84 L.Ed.2d 353 (1985). We give weight to the findings of fact of the juvenile court, especially when considering the credibility of witnesses, but we are not

bound by those determinations. *Id.* at 491–92.

■ **II. *Statutory Criteria.*** Anthony contends the district court erred in terminating his parental rights pursuant to Iowa Code section 232.116(1)(g). Section 232.116(1)(g) permits the juvenile court to terminate the parent-child relationship if the court finds all of the following have occurred:

(1) The child is three years of age or younger.

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Anthony does not dispute the first three elements of section 232.116(1)(g) were met; rather, he only argues the fourth element was not met. Anthony asserts the district court did not give sufficient consideration to whether A.A. should be placed with Anthony's mother.

Placement of A.A. with Anthony's mother was considered in the fall of 1994. In the case permanency plan of December 1994, DHS recommended against custody being placed with Anthony's mother for the following eight reasons:

(1) A.A. was very attached to his sisters and depended a great deal on his relationship with them.

(2) A.A. was well adjusted in the foster home as it had been the only place he had lived since being removed from his parents custody.

(3) A.A. had a great deal of trouble initially adjusting to the change of environ-

---

1. At the time the petition was filed, the location of Anthony was unknown.

ment and now was very settled in the foster home.

(4) Anthony's parents had no relationship with A.A. as they had only seen pictures of him.

(5) A.A. is very difficult to manage and DHS questioned whether Anthony's parents could handle him.

(6) The foster parents had shown a willingness to adopt all three children.

(7) A.A. would most likely have a difficult time adjusting to the new environment and, given his history, A.A. would not likely cope well with the change.

(8) DHS was concerned Anthony's mother was more interested in her own interests, rather than A.A.'s best interests.

While DHS did not recommend custody of A.A. be placed with Anthony's mother, DHS did recommend regular contact and visitations be allowed. The district court continued placement of A.A. in foster care. Anthony's parents were granted visitation. This order was not appealed.

We find no evidence in the record, and Anthony fails to point out any, which shows Anthony's parents ever exercised their visitation rights. There was no evidence Anthony's parents had any type of relationship with A.A. Anthony did not present any evidence at the termination hearing to show his parents' desire to take custody of A.A. Anthony also did not show his parents were capable of providing for A.A. if they were given custody. Further, Anthony testified he did not believe his parents could take care of A.A.'s siblings in addition to A.A. Consequently, if A.A. had been placed with Anthony's parents, then the children would need to be split up.

Anthony failed during the termination hearing to provide sufficient, if any, evidence regarding the possibility of placement with his parents. On the other hand, the foster parents, who have had custody of the children since they were removed from the home, have expressed a desire to adopt all three children. Upon our de novo review of the record, we find the district court did not err in finding the statutory requirements of section 232.116(1)(g) were met.

■ **III. *Best Interests of the Child.*** Anthony also contends the termination of his parental rights would not be in the best interests of A.A. While Anthony has sent correspondence to A.A. on a regular basis during his incarceration, A.A. has had very little personal contact with Anthony since A.A. was born. Anthony has not seen A.A. since the middle of 1993 when he was in jail in Polk County. Prior to that, Anthony had not seen A.A. since the middle of 1992.

A.A. is in a foster home in which he is well adjusted. A.A.'s siblings are also in the foster home. All three children have been in this same foster home since they were removed from their parents; and the foster parents have expressed a desire to adopt all three children. We find the best interests of A.A. would be served by the termination of Anthony's parental rights. We affirm the ruling of the district court.

**AFFIRMED.**